Bowie *vs.* Hall and Clagett.

(Decided 23d November, 1888.)



FRANCIS M. BOWIE *vs.* CLARENCE HALL and HENRY W. CLAGETT.

*Promissory note—Stipulation to Pay Attorney's commissions.*

A stipulation in a promissory note, in case of its non-payment at maturity, to pay the costs of collecting the same, including attorney's commissions, is valid and can be enforced.

APPEAL from the Circuit Court for Prince George's County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, MILLER, IRVING, BRYAN, and McSHERRY, J.

*William Stanley,* for the appellant.

No appearance for the appellees.

MILLER, J., delivered the opinion of the Court.

In this case suit was brought by the payee against the makers of the following note or instrument in writing:

"$1060.            UPPER MARLBORO, *May 4th*, 1887.

"Three months after date .we jointly and severally promise to pay to Francis M. Bowie, at the National Bank of the Republic of Wash'n, D. C., the sum of one thousand and sixty dollars, value received, with interest. And we further promise that if said note is not paid at maturity, we will pay all cost or expense of collecting the same, *including attorneys' commissions*, the same to be calculated and included in the judgment recovered upon said note in case of suit."

"C. HALL."

"H. W. CLAGETT."

· All errors in pleading were waived, but before the trial-day one of the defendants paid the full amount of the note and interest, but refused to pay attorneys' fees. This, therefore, was the only question in controversy to be decided by the Court. The Court below decided against the recovery, and gave judgment in favor of the defendants. From that judgment the plaintiff has appealed.

In *Maryland Fertilizing & Manf. Co. vs. Newman*, 60 *Md.*, 584, this Court held that a similar stipulation destroyed the negotiability of the note, but by no means decided that it was a void contract. On the contrary, after citing the cases of *Bullock vs. Taylor*, 39 *Mich.*, 137, and *Witherspoon vs. Musselman, &c.*, 14 *Bush*, 214, where a contract of this character in a note had been treated as a stipulated penalty and declared void, the Court said: "But to declare such stipulations void in order to maintain the negotiable character of

the note, is certainly a strong thing for the Court to do, unless it clearly contravened some established principle of law. Parties have the right to make their contracts in what form they please, provided they consist with the law of the land, and it is the duty of the Courts so to construe them, if possible, as to maintain them in their integrity and entirety. While the instrument under consideration may not be a valid negotiable promissory note it does not, by any means, follow, that it is not a valid contract of another description." The Court then, though they affirmed the judgment, remanded the cause in order to allow the plaintiff to amend his declaration and to declare on the special agreement as assignee thereof, instead of suing, as he had done, as endorsee of the note. And in *Maus vs. McKellip*, 38 *Md.*, 238, a like stipulation in a mortgage was expressly upheld.

But even if the question were a new one we can discover no ground whatever upon which to declare such a contract void. In the case before us the interest on the sum lent, up to the maturity of the note, is less than half the most reasonable commissions the lender will have to pay an attorney for collecting it by suit or otherwise. So that by default of the borrower he would lose all the interest and part of the principal. What possible objection can there be in allowing parties to contract against a result like that? In our judgment such contracts violate no principle of law or public policy. It seems to us simply a stipulation intended to secure punctuality in the performance of the contract, and as such contains no element of oppression to the borrower. Its tendency, in fact, is to help him to borrow at a less rate of interest, as punctuality in payment is usually taken into consideration in fixing the terms of a loan. Nor can it be regarded as a cover to usury, for its effect is clearly not to put any money

Bowie *vs.* Hall and Clagett.

above the legal rate of interest, into the pocket of the lender, but merely to enable him to get back his money with legal interest and nothing more.

. We are not aware of any case in which such a contract has come before an English Court, and this may result from what we believe to be the fact that the practice of remunerating attorneys and solicitors for their professional services, by a certain percentage on money collected by them for their clients by suits in Court, has never prevailed in England. In this country, however, such a practice has been commonly adopted. Contracts, therefore, like the present are not unusual here, and have become numerous in recent times. In some cases their validity has been denied by the Courts, but it seems they are sustained by a decided preponderance of authority. Counsel for appellant has with commendable diligence, collected a number of authorities sustaining them ·(which we give), and doubtless others to the same effect may be found. *Huling vs. Drexell,* 7 *Watts,* 129; *McAllister's Appeal,* 59 *Penn.,* 204; *Smith vs. Silvers,* 32 *Ind.,* 321; *Clawson, et al. vs. Munson,* 55 *Ill.,* 394; *Camp, Glover & Co. vs. Randle & Co.,* 81 *Ala.,* 240; *Miner vs. Paris Exchange Bank,* 53 *Texas,* 559; *McGill vs. Griffin,* 32 *Iowa,* 445; *Chase vs. Whitmore,* 68 *Cal.,* 545; *Peyser vs. Cole,* 11 *Oregon,* 39. We are, therefore, of opinion the learned Court below was in error in refusing to allow the plaintiff to recover these commissions in this case.

*Judgment reversed, and*
* · new trial awarded.*

(Decided 23d November, 1888.)