# FIRST MORTGAGE BOND HOMESTEAD ASSOCI-ATION, INCORPORATED, Trustee, to the Use of Roberta Porter and Rachel E. Robey,

## *vs.*

# HERMAN G. MEHLHORN and LILLIAN L. MEHL-HORN, His Wife.

*Building association mortgages: judgments pro confesso; sum actually due; costs.*

The appellees executed ·an application for certain shares in the appellant's building association; they agreed to pay monthly, in advance, certain sums on said stock for taxes and expenses on the property that they were to mortgage to the association, as trustee, and also for interest on certain bonds they were to execute for a loan to be procured for them by the association from third parties, which bonds were also to be secured by mortgage to the association, as trustee; the bonds were payable in ten years from their date, or upon default in any of the monthly payments thereon; the association was authorized, in case of a default in such payments, to have an attorney named in the mortgage or any other attorney appointed by him, to confess a judgment in favor of the holders of the bonds for the face value thereof, with interest and costs of the proceedings; upon default in some of the payments, the attorney docketed a suit upon the bonds and sought to obtain a judgment by a confession for the face value, interest and costs; the court refused to enter the judgment by confession, but entered a judgment

for the defendants for the costs; on appeal the court's order refusing such judgment was sustained, the Court of Appeals holding that: Such judgment would have been a final judgment determining the extent of the appellees' liability as of its date for the principal of the bonds (and interest), whereas the application, mortgage and bonds showed that the appellees were entitled to credits not allowed by the judgment. p. 451

If the judgment were intended merely as collateral security for whatever should be found due on the proper accounting with the association, as trustee, there should have been an agreement filed and a memorandum of the judgment entered to that effect. p. 450

The court was right in refusing to have the judgment entered, when it appeared from the papers in the case that the plaintiff was not entitled to a judgment for the amount named in the order of the attorney. p. 451

As the case was on the docket, and the plaintiff's counsel did not order it dismissed, the defendant was entitled to the costs.
p. 451

*Decided January 14th, 1919.*

Appeal from the Baltimore City Court. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*S. S. Field,* for the appellant.

*O. Parker Baker* submitted a brief for the appellees.

THOMAS, J., delivered the opinion of the Court.

On the 25th of April, 1912, the appellees executed what is termed in the record an "application," by which they sub-

scribed to fifteen shares "of series A and B stock in the First
Mortgage Bond Homestead Association, Incorporated," and
agreed to comply with the by-laws, rules and regulations of
the association, and "to pay all payments in monthly install-
ments of $16.67 each on said stock as dues on the first Mon-
day of each month in advance," and further agreed, in case
a loan was procured by the association for them, that they
would not withdraw any portion of the amount deposited by
them until the maturity of the stock, "or when the mortgage
is released," when the association or trustee named in the
mortgage to be executed by them was authorized to pay to the
holder or holders of the bonds, in the names of the appellees,
all moneys due the appellees under the by-laws and necessary
to redeem the bonds and procure a release of the mortgage;
"also in the meantime to pay all interest coupons on the
mortgage indebtedness, taxes, water rent, ground rent or
other charges due or to become due on the property" therein
referred to, and to deduct the same from any payments or
deposits made by them to the association. Following a formal
application to the asociation to procure for them a loan of
$1,500.00, at six per cent. interest, and an offer as security
therefor of all moneys paid by them to the association, and
No. 2016 St. Paul street, in Baltimore City, they agreed to
execute a mortgage to the association as trustee, and to exe-
cute coupon bonds in such denominations as might be desired,
secured by the mortgage, and payable to bearer or registered
holder thereof at the maturity of the stock, or upon default,
not later than ten years after date. After certain statements
or representations in regard to the property to be conveyed
by the mortgage and charges against the same, the applica-
tion contained, among others, the following additional stipu-
lations:

> "We further agree that said association shall be our
> agent in the creation of the sinking fund to meet this
> loan, with no risk or responsibility on the part of the
> person or persons advancing the money for this loan in
> any manner, and that we will deposit in addition to

the dues above mentioned on the first Monday of each month, hereafter, the sum of $7.50, as interest on said loan, to be paid by said association each six months to the holders of the securities, and the sum of $16.25 as the expenses on said property to the parties legally entitled to receive the same, and such other sum as may be necessary.

"It is also understood and agreed that said association will invest and keep invested all moneys deposited by us, and after we have deposited as dues the sum of $104.00, that the association will assume, if invested, the interest on this amount, and the same may be deducted from the monthly payments of the applicants, or added to the dues or in such other manner as may be agreed upon from time to time. * * *

"It is also understood and agreed that if we adopt the drop-interest plan, we are not to share any of the profits of the association, and shall get credit for only such payments as we shall make as dues.

"It is 'further understood and agreed that if we should become in arrears in our monthly installments of dues, interest, fines, expenses or any portion of either, or shall fail to pay any expense or public dues or charges on the property when due and payable, or shall fail to keep up the improvements on the property in their present condition, or make a false statement concerning said property herein, then the entire mortgage debt shall be deemed due and payable, and any method may be pursued for the collection of the mortgage debt at the option of the trustee as may be enumerated in the mortgage."

On the same day the appellees executed a mortgage of their said property to the association as trustee, and also two bonds, one for $1,000.00 and the other for $500.00, payable to bearer or ·registered holder thereof, with interest, at six per cent., payable semi-annually from the 25th day of April, 1912, until the principal of the bonds was paid according to the terms of the application and mortgage, on surrender of the coupons at the office of the association.

The mortgage, after reciting that the appellees were members of the association; that they had subscribed to ten shares of series B stock and five shares of series A stock of the association; that they had filed with the association an application to secure for them a loan of $1,500.00; that the association, relying upon the truth of the statements contained in the application, had procured the money applied for from divers persons, and that the mortgagors had executed their two coupon bonds for $1,000.00 and $500.00, No. 126 and No. 127, respectively, payable to bearer or registered holder thereof, with interest, at the maturity of the stock of the mortgagors, "not later than ten years from date, or upon default," contained the following recital:

> "And in order to create a sinking fund with which to meet said bonds at maturity, the mortgagors have agreed in said application to deposit regularly on said stock monthly installments of $40.39/100 each, being principal, interest and expenses, as particularly set forth in said application, which is hereby made a part of this mortgage, with said Association, as their depository until their stock has matured (with no power of withdrawal in the mortgagors, and with no risk or responsibility on the part of the bondholders in any way) when it shall be paid by said Association to the bondholders upon presentation and cancellation of their bonds and coupons or as hereafter provided; and in order to secure the prompt payment of said bonds and the interest coupons attached hereto, as they shall respectively become due and payable, the performance of the agreement to create a sinking fund and all other covenants and agreements contained in the application, the bonds and this mortgage, these presents are executed."

The mortgage declared that the property thereby conveyed should be held by the association in trust for the benefit and security of the holders of the bonds and the enforcement of the payment of said bonds and interest thereon, "and the performance and compliance with the covenants and conditions

of the mortgage, the application for this loan and the bonds which are secured hereby," and then provided:

> "That if the said mortgagors, their heirs, personal representatives and assigns, shall well and truly pay or cause to be paid, the aforesaid bonds, aggregating $1,500.00, and all interest or coupons attached to said bonds, when and as they shall respectively become due and payable, and shall perform all the agreements contained in the application for this loan, the bonds and the by-laws of said association, and all the covenants contained herein on their part to be performed, then this mortgage shall be void. And it is agreed that until default be made in the premises, the mortgagors shall possess the aforesaid property upon keeping up the improvements on said property in their present condition, which they covenant to do; and paying in the meantime all fixed charges and expenses, which charges and expenses, mortgage debt and interest the said mortgagors for themselves, their heirs, personal representatives and assigns, do hereby covenant to pay when legally demandable, but should any of the statements contained in the application for this loan be untrue, or if default be made in the payment of said bonds or the interest obligations attached thereto, or in the payment of the installments of principal and interest in the creation of the sinking fund to meet the bonds and interest obligations attached thereto as specifically set forth in the application for this loan and the by-laws at the time limited for the payment in said application or by-laws, or any part of either or in any agreement, covenant or condition contained in said bonds, application, by-laws and this mortgage, then the entire mortgage debt shall be due and demandable."

The association was authorized by the mortgage in case of default to take possession of the property and to hold the same for a period not exceeding five years and to collect the rents, etc., and to deposit the net income therefrom, if any, with the association "the same as if the mortgagors had de-

posited under the terms of" the mortgage, and the mortgage
also contained the following provisions for a judgment by
confession and a decree for the sale of the property:

> "And it shall be lawful for O. Parker Baker, Esq.,
> or any attorney he may designate, of any court of rec-
> ord, to appear for the mortgagors in any court of law
> or equity having jurisdiction over mortgagors or their
> property, and waive all process and confess a judg-
> ment in favor of said trustee to the use of the holders
> of the bonds for the face value of all the bonds secured
> hereby, with accrued interest, and the cost of the pro-
> ceedings.

> "And the said mortgagors hereby consent  that a
> decree may be passed for the sale of said property
> under the provisions of the law in such cases made and
> provided, or this mortgage may be foreclosed under
> any law or laws of the State of Maryland, either pub-
> lic, local or general, or by the method usually prac-
> ticed by mortgagees in the city or county where this
> mortgage is recorded.  In any method the attorney
> conducting the proceedings shall be allowed a fee of
> $25.00 in addition to usual commissions."

The bonds executed by the appellees referred to the appli-
cation and to the terms of the mortgage, and also contained
the following provision:

> "It is also understood and agreed by the mortgagors
> that they will create a sinking fund to meet the series
> of bonds and the coupons attached thereto, and will
> deposit with the First Mortgage Bond Homestead As-
> sociation on the first Monday of each month the sum
> of sixteen sixty-seven-one hundred ($16.67) as a part
> of the principal and the sum of seven fifty-one hun-
> dred ($7.50) dollars as the accrued interest on this
> series of bonds and also all other expenses and charges
> and costs to the trustee as are particularly set forth in
> the sworn application for this loan and the mortgage
> or deed of trust which secures this bond.  This bond
> shall become due and demandable at a time when the
> mortgagors should have to their credit on account of

the principal with the First Mortgage Bond Homestead Association, their agent or depository, a sum equal to the face value of all bonds issued in this series and secured by the mortgage or deed of trust aforesaid (if they continue to deposit regularly the installments aforesaid with the association on the property aforesaid, with all interest charges and costs which have accrued thereon in accordance with the mortgage or deed of trust and the application for this loan now in the hands of the trustee, or upon default as prescribed by the mortgage or deed of trust; provided, however, the same may be paid off in other ways as prescribed by the mortgage or deed of trust and the application for this loan and upon the conditions therein recited, which application is hereby made a part of the entire obligation the same as if it was recited in full herein). If default shall be made in the payment of any installment of interest or principal or the charges and costs to the agent of the mortgagors aforesaid, in the creation of the sinking fund to meet these bonds and coupons as aforesaid as they shall respectively be due and payable, or if said agent of the mortgagors aforesaid shall fail to turn over said funds when the coupons or bonds shall be due and payable under the terms hereof or either of them, then at the option of the holders or the trustees these bonds shall be due and demandable and may be enforced by sale of the property or otherwise as provided by the said mortgage or deed of trust and these bonds."

The bonds constituted and appointed Evelyn F. Belt agent and attorney for the appellees, with power and authority to appear for them and to confess a judgment in favor of the holder of the bonds for the amount due thereon, with interest and cost of suit.

On the 8th of March, 1918, the appellant, the First Mortgage Bond Homestead Association, trustee, filed in the Baltimore City Court its declaration in a suit against the appellees "to the use of Roberta Porter and Rachel E. Robey," the

application, mortgage and bonds executed by the appellees, an affidavit executed by George E. Robinson, attesting witness to the mortgage, that the debt created by the bonds was due to the holders thereof, and that the appellees had made default, and the following order signed by George E. Robinson, attorney for plaintiff, and O. Parker Baker, attorney for defendants:

> "Mr. Clerk: Docket this case by consent as of the February Rule Day, 1918; enter the appearance of O. Parker Baker for the defendants, and enter a judgment by confession for the plaintiff (to the use of Roberta Porter as to $1,000 and to the use of Rachel E. Robey as to $500) for the sum of $1,500 and the cost of the proceedings."

The declaration alleged that the defendants executed the bonds and the mortgage in which they agreed to pay the trustee $40.39 per month with which to pay the interest on said bonds, the expenses on said property, and to create a sinking fund to meet said obligations as they became due, and that by the terms of the mortgage and application upon default in the payment of said $40.39 per month the whole of said obligations became due; that the defendants had defaulted, their last payment being on August 9th, 1917, and that they had also failed to pay taxes for 1917 and the ground rent due September 1st, 1917, and March 1st, 1918, whereby the attorney for the defendants was authorized by the mortgage to confess judgment against them for the use of the holders of the bonds for the face value thereof, with accrued interest and costs, etc.

The Court below passed an order refusing to enter the judgment by confession, and a docket entry shows that on the same day a judgment was entered for the defendants for costs. This appeal is from the judgment and from the order of Court refusing to enter the judgment by confession.

By the terms of the application, mortgage and bonds the appellees were required to make monthly payments to the association as trustee, to provide a sinking fund for the re-

demption of the bonds, to cover the interest thereon and the expenses on the property conveyed to the trustee by the mortgage. According to the mortgage the aggregate amount to be paid monthly was $40.30, and according to the application and bonds $16.67 of that amount was to be applied to the sinking fund for the payment of the principal of the bonds, and $7.50 was to be applied to the payment of the interest thereon as it became due. The application, mortgage and bonds were executed on the 25th of April, 1912, and the *narr.* alleges that the appellees defaulted in the payment of the monthly dues of $40.30, and that the last payment thereof was made by them, on the 9th of August, 1917. It would seem therefore from the averments of the *narr.* that the appellees had complied with the terms of the application, mortgage and bonds until the default complained of, and had during a period of five years from the date of the mortgage, etc., made the monthly payments required thereby, yet there was no account or statement filed with the declaration showing the credits to which the appellees were entitled, and the judgment by confession which the plaintiff sought to have entered was for the full amount of the principal of the bonds.

The appellant contends that the association in receiving the monthly payments made by the appellees acted as the agent of the appellees and not as the agent of the holders of the bonds, and that the mortgage, as a part of the security for the loan, expressly authorized a judgment by confession in favor of the trustee for the use of the holders of the bonds for the face value of the bonds and accrued interest. Assuming that under the proper construction of the application, mortgage and bonds the association received the monthly payments provided for as the trustee and agent of the appellees, and that these payments, in so far as they were applicable to the payment of the principal of the bonds and interest thereon, were not, strictly speaking, credits on the bonds until so applied by the association under the arrangement and contract between the association, bondholders and appellees, nevertheless, by the express terms of the mortgage the entire

mortgage debt became due and demandable upon default, and it is conceded by the appellant that thereupon the association became the trustee or agent of the holders of the bonds "to enforce the security given for their protection." One of the securities provided for the protection of the bondholders was the sinking fund to be created by the monthly payment to the association as trustee of the sums of $16.67 and $7.50. Therefore when, upon default, the association became the trustee and agent of the holders of the bonds "to enforce the security given for their protection," there is no reason why the appellees should not have been given credit for the amount in the sinking fund in the hands of the association available for the payment of the bonds.

In *Huston* v. *Ditto*, 20 Md. 305, CHIEF JUDGE BOWIE, said: There were three kinds of judgments recognized by our courts, viz: interlocutory judgments, final and effective judgments and judgments which were final but not effective, and he quotes the statement in *Evans' Pr.* 339: "A judgment by confession is not, in our practice, considered an interlocutory judgment; * * * the confession is considered as an admission of the whole claim, unless it is made, as it frequently is, on terms. The terms, whatever they may be, are in that case reduced to writing and given to the clerk, who inserts them in his memorandum." Mr. Poe states that a final and effective judgment was one where "nothing remained to be done to establish both the liability of the defendant and its precise extent," and he gives as examples of judgments that were final but not effective until the precise amount of the plaintiff's claim was ascertained: "A judgment by confession for the plaintiff without specifying the amount; a judgment by confession for the plaintiff 'on terms to be filed,' and a judgment for the plaintiff for so much as A. B. shall say is due." 2 *Poe P. & P.*, sec. 357. But he says in section 357A that since the Act of 1864, Ch. 311 (sec. 18, Art. 26 of the Code of 1912), "our common-law judgments are simply of two kinds: interlocutory and final."

Judgments, like mortgages, may be taken as collateral security for an existing indebtedness, or as security for future advances. Mr. Poe says that when a judgment is "entered for either of these purposes an express written agreement should be filed in the case, to show the precise character and object of the judgment and prevent subsequent controversy," and, we may add, as suggested in *Evans' Practice, supra,* the substance of the agreement, or at least a reference to it should be inserted by the clerk in his memorandum. 2 *Poe's P. & P.,* sec. 401; *Neidig* v. *Whiteford,* 29 Md. 183-184; *Robinson* v. *Con. Real Estate Co.,* 55 Md. 105.

In the case at bar the judgment by confession which the appellant attempted to have entered was a final judgment determining the extent of the appellees' liability as of the date thereof to be the amount of the principal of the bonds, whereas the application, mortgage, bonds and declaration indicated that the appellees were entitled to credits not allowed in the judgment. If the judgment was intended merely as collateral security for whatever sum should be found upon a proper accounting to be due the association as the trustee and agent of the holders of the bonds, there should have been an agreement filed and a memorandum in the judgment to be entered to that effect.

The appellant contends that the entry of the judgment as proposed would not have exposed the appellees to the danger of any injustice to them, because if the association had attempted "to collect the whole amount of the judgment without crediting the amounts which had been paid into the association the Court of law had adequate and ample powers to prevent that from being done." The power of the Court in which a judgment is obtained to compel the entry of proper credits thereon, whether the defendant was entitled to the credits before or after the judgment was entered, is recognized in *Huston* v. *Ditto, supra,* and *Gorsuch* v. *Thomas,* 57 Md. 334. But the existence of such power furnishes no ground for entering the judgment by confession referred to in this case. On the contrary, if the Court would have com-

pelled the association to credit the amounts paid to it before attempting to collect the judgment, there is greater reason why the Court should have refused to have the judgment entered when it appeared from the declaration and papers in the case that the plaintiff was not entitled to a judgment for the amount named in the order of counsel.

It follows from what has been said that the Court below properly refused to enter the judgment by confession.

In regard to the judgment in favor of the defendants for costs, it is only necessary to say that the application and bonds authorize the association as trustee in case of default to pursue such methods for the collection of the debt as were provided in the mortgage. The mortgage did not authorize the association to maintain a suit, for the use of the holders of the bonds, in a Court of law for the amount due on the bonds. The case was on the docket, and as the Court below properly refused to have the judgment by confession entered, in the absence of an order of plaintiff's counsel to enter the case dismissed, the defendants were entitled to a judgment for costs.

*Order and judgment of the Court below*
*affirmed, with costs.*