## QUALIFIED BUILDERS, INC. ET AL. *v.* THE EQUITABLE TRUST COMPANY

[No. 85, September Term, 1974.]

*Decided February 4, 1975.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Robert E. Bullard,* with whom were *Bullard & Deutchman, P.A.* on the brief, for appellants.

*Kenneth A. Lechter,* with whom were *Fisher & Walcek* and *Irving H. Fisher* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This is an appeal from a final judgment entered in the Circuit Court for Prince George's County in favor of The Equitable Trust Company, appellee, for attorney's fees which were claimed under the terms of a confessed judgment note, executed on October 18, 1972, by the appellants, Qualified Builders, Inc., the maker, and James C. and Mary E. Proffitt, the endorsers.[1]

The note at the center of this controversy, executed to the appellee bank as a renewal promissory note in place of an obligation having like provisions dated July 20, 1972, is for the sum of $75,000, payable as to both principal and interest in 90 days. This cognovit note authorizes the confession of judgment in a prescribed manner, upon the event of default, for the amount then due, as follows:

> "Upon the event of insolvency, bankruptcy, or death of any of the Undersigned or if the Holder in good faith believes that the prospect of payment of this Note is impaired, the unpaid principal and interest of this Note shall immediately be due and payable at the option of the Holder.
>
> "The Undersigned severally waive all exemptions to the extent permitted by law, demand, presentment for payment, protest and

---

1. By the provisions of the endorsement the Proffitts agreed to be bound by the terms of the note "as though we were makers."

notice of protest and of non-payment. After maturity of this Note (whether by acceleration, extension or otherwise) the Undersigned hereby authorize(s) *any attorney* designated by the Holder *to appear for the Undersigned in any Court of record and confess judgment against the Undersigned* in favor of the Holder hereof for the amount of the unpaid principal and interest due hereunder, together with costs of suit and the sum of fifteen per cent (15%) of such unpaid principal and interest as attorney's fees. The word 'Undersigned' shall include all makers, endorsers, sureties, guarantors and assignors of this Note and shall also include the singular as well as the plural number." (emphasis added).

Simultaneously with the execution of the renewal note on October 18, or shortly thereafter, by an undated collateral written agreement, Char-Mel, Inc., a corporation, and J & M Builders, a partnership, whose principal officers and partners, respectively, are the Proffitts, "in consideration of [Equitable's] forbearance to sue" directed, as additional security for the loan, "any settlement attorney" to pay over to the bank, as a credit on the note, $8500 from the sale proceeds of each lot in the Oak Crest subdivision, located in Prince George's County, then being developed by the corporation and the partnership. In December of 1972, the first settlement of an Oak Crest lot sale was consummated and, as required by this collateral agreement, $8500 was paid to the bank as a credit on the note. However, when no further payment was received over the following two-month period, Frank Small, a senior vice-president of Equitable, becoming apprehensive concerning the security the bank held for the Qualified Builders' loan, telephoned Ronald B. Edlavitch, the bank's attorney, on March 2, and directed him to "file the note." [2] When, obeying this instruction, the

---

2. It may well be that this instruction to "file the note," given by the bank's vice-president, merely contemplated reducing the note to judgment in order to obtain a lien similar to that of a mortgage and not collecting the indebtedness at that time. This is permissible. Mtg. Homestead Assn. v.

attorney caused a suit to be docketed on the note in the Circuit Court for Prince George's County, the clerk of that court, without either prior notice to the defendants or an authorization by an attorney for him to so act being contained in the agreement (as is frequently provided in cognovit notes), entered judgement in favor of the appellee against the appellants and J & M Builders and then issued a summons for each, which was directed to the sheriff of Montgomery County for service.[3]

When the appellants learned of this development, first on March 7, 1973, while attending a settlement on one of the Oak Crest lot sales in attorney Edlavitch's office, and then more formally later, at the time the summonses were served on March 23 and 28, they timely filed a motion to vacate the judgment on April 11, 1973. Maryland Rule 645 b. After considering this motion, Judge Ralph W. Powers opened the judgment but retained the lien pending final disposition and allowed the appellants 10 days to file responsive pleadings. On June 4, 1973, the appellants filed a general denial, and

---

Mehlhorn, 133 Md. 439, 450, 105 A. 526 (1919); Robinson v. Cons. Real Estate Co., 55 Md. 105, 109-10 (1880). If this was the objective no attorney's fees could be collected from the makers as, unless the services contemplated by and commensurate with the agreement (in this case, collection of the obligation by the attorney) are actually rendered, no payment of the fee mentioned in the note can be required. "The fees provided in . . . [cognovit] notes . . . [are] not gratuities to which the attorney [is] entitled upon the entry of his appearance, and [requiring] payment of such fees without corresponding services . . . [would be] in error." American Bank v. Mackey, 247 Md. 319, 324-25, 231 A. 2d 15 (1967); Webster v. People's Loan Etc. Bank, 160 Md. 57, 63, 152 A. 815 (1931). Moreover, "[i]f the plaintiff pays less for the services of his attorney than the amount stipulated, or allowed by the court where the amount is not specified in the instrument (Johnson v. Phillips, 143 Md. 16, 27, 122 A. 7 (1923)), then it is his duty to remit or credit the difference; if he pays more than the fees entered, then he is out the excess." Webster, supra at 63.

3. The docket entry reads:

"3-2-73 Judgment by Confession entered in favor of the Plaintiff, The Equitable Trust Company, and against the Defendants, Qualified Builders, Inc., James C. Proffitt, Mary E. Proffit, and J & M Builders, for the sum of Sixty Six Thousand Five Hundred and 00/100 ($66,500.00) dollars plus interest at eight per cent (8%) per annum from December 28, 1972, plus costs of Seven Thousand Five Hundred and Three and 00/100 ($7,503.00) dollars, which costs include attorney's fees of Seven Thousand Four Hundred Seventy Five and 00/100 ($7,475.00) dollars. Plus $28.00 dollars costs paid by the Plaintiff."

later, by a separate pleading, in conjunction with Char-Mel, Inc. and J & M Builders, apparently [4] filed a third-party claim against Edlavitch, the bank's attorney, seeking to recover the $1200 alleged to have been wrongfully withheld, as part payment of the attorney's fees included in the confessed judgment, from the sale of lots in the Oak Crest subdivision.

It is agreed that before the matter was heard on its merits by Judge James F. Couch, Jr., on February 14, 1974 (and in fact prior to the end of June 1973), the entire principal and interest due Equitable was paid in full, leaving only to be decided the question of whether the fifteen percent attorney's fees mentioned in the note was due. When Judge Couch concluded that the appellants had an obligation to pay these attorney's fees and, consequently entered judgment against them for $7475, the appellants timely filed this appeal.

The appellee in its brief suggests that the question here is: "Did the [trial] Court err in finding that a collateral security agreement did not bar the appellee's right to enter a confession of judgment pursuant to a note with an acceleration of maturity clause, the judgment being taken subsequent to the term of said note where there existed a reasonable belief that the payment of the debt was in jeopardy?" However, it is unnecessary for us to resolve this issue as it is clear from the record that no valid judgment was entered on March 2, 1973 — a condition precedent to the fifteen percent attorney's fees', mentioned in this cognovit note, becoming due and payable. *American Nat. Bank v. Mackey*, 247 Md. 319, 323, 231 A. 2d 15 (1967); *Webster v. People's Loan Etc. Bank*, 160 Md. 57, 62, 152 A. 815 (1931). Accordingly, we are compelled to reverse the judgment of the trial court which allowed the appellee to recover these fees.

---

4. We say "apparently" because there is contained in the briefs a suggestion that this is the case, but no such pleading has been included in the printed record extract. Since there was a failure to so include the portion of the record pertaining to this third-party claim, which is necessary for us to have in order to arrive at a determination of the questions pertaining to it, we will not consider any such rulings which may have been adverse to the appellants (Maryland Rules 828 b 1 and 828 i).

We begin the discussion of our reason for this ruling by recognizing that "there is no question that a stipulation in a promissory note [(the contract),] in case of its non-payment at maturity, to pay the costs of collecting the same, including attorney's fees, is valid and can be enforced," *Brenner v. Plitt,* 182 Md. 348, 366, 34 A. 2d 853 (1943), even though, in the absence of either statutory or contractual authority, expenditures for attorney's fees ordinarily are not recoverable as damages by the successful litigant against his unsuccessful adversary. *Empire Realty Co. v. Fleisher,* 269 Md. 278, 286, 305 A. 2d 144 (1973); *Brenner v. Plitt, supra; Legum v. Farmers Nat. Bank,* 180 Md. 356, 360, 24 A. 2d 281 (1942); *Webster v. People's Loan Etc. Bank, supra; Gaither v. Tolson,* 84 Md. 637, 36 A. 449 (1897); *Bowie v. Hall,* 69 Md. 433, 16 A. 64 (1888).

That no attorney's fees may be collected by a plaintiff under an agreement contained in a cognovit note, unless there exists a valid confession of judgment, is made plain by the prior decisions of this Court. *American National v. Mackey,* 247 Md. 319, 324, 231 A. 2d 15 (1967); *Weiner v. Swales,* 217 Md. 123, 127, 141 A. 2d 749 (1957); *Webster v. People's Loan Etc. Bank, supra.* We quote what was said in *Webster* as being both applicable and controlling here:

> "According to the terms of the note, no judgment or lien for attorney's fee could be entered and no charge made until the entry of judgment for the principal debt or deficiency; the only authority to charge the fees having been included in the provision for judgment, and then at the rate of ten percent [(here fifteen percent)] on the amount owing. The authority of the clerk to enter the judgment by confession is derived from the statute (art. 26, sec. 6, of the Code) [(now from Maryland Rule 645)] and in accordance with the terms of the consent. *Tyrrell v. Hilton,* 92 Md. 176, 48 A. 55. 'When the clerk is authorized to enter judgment without the agency of an attorney, he "may exercise the power only when the amount due appears on the instrument or can be rendered certain by

calculation from its face." ' *Johnson v. Phillips*, 143 Md. 16, 27, 122 A. 7, 12." 160 Md. at 60.[5]

The record in this case discloses that a valid judgment was not entered on March 3, 1973, since prior to its entry the circuit court had not obtained jurisdiction over the defendants, the appellants here. This follows because: (1) no appellant had been summoned or otherwise legally notified of the pendency of the suit until after the judgment had been entered and none had appeared in proper person, and (2) no attorney, as is expressly required by the note, in fact "confessed judgment" on behalf of the appellants. It is true that by the terms of the note the maker and endorsers waived process and notice, but this waiver could only become operative if an attorney entered the scene and acted for the appellants in conformity with the dictates of the warrant which was contained in the instrument. *Forwood v. Magness*, 143 Md. 1, 7, 121 A. 855 (1923). Likewise, in *Forwood* it is made clear that:

> "Where a judgment is entered on a warrant of attorney, the only basis for the acts of the attorney entering an appearance and confessing a judgment against the party who signed the warrant is found in the warrant itself . . . . Not only must the statutory authority to confess judgment be strictly followed but it is also necessary that all proceedings in the confession of judgment must be within the strict letter of the warrant of attorney. These instruments are strictly construed, and an attorney acting under a warrant cannot change its terms or enlarge its scope." 143 Md. at 7-8.

Inasmuch as the Clerk of the Circuit Court for Prince George's County acquired no prerogative either from the

---

5. In Tyrrell v. Hilton, 92 Md. 176, 48 A. 55 (1900), where the terms of a note specifically stipulated: "And we do hereby confess judgment for the above sum with interest and costs of suit," it was decided that this was sufficient assent to the confession of judgment by the maker, in proper person, so as to authorize the clerk of the court, in accordance with Sec. 6, Art. 26 of the 1888 Code (now superseded by Maryland Rule 645), to enter the judgment.

586

note or from any other legal source to enter the *in personam* judgment, he acted without authority and any judgment entered without jurisdiction is *coram non judice,* thus null and void. *Kartman v. Miliman,* 144 Md. 502, 125 A. 170 (1924). Since no valid judgment was entered on March 3, 1973, nor thereafter, before the principal and accrued interest had been paid in full, no attorney's fees became due and owing by the appellants to the appellee. *Johnson v. Phillips, supra* at 25. It follows from what has been said that the judgment of the trial court must be reversed.

> *Judgment of the Circuit Court for Prince George's County reversed and judgment is entered in favor of the appellants and against the appellee for all costs which accrued after March 3, 1973, with prior costs to be paid by the appellants.*
>
> *Costs in this Court to be paid by appellee.*